568 F.2d 549
 ASSOCIATION OF BANK TRAVEL BUREAUS, INC., Petitioner,
v.
The BOARD OF GOVERNORS OF the FEDERAL RESERVE SYSTEM, Respondent,
and
American Society of Travel Agents, Inc., Intervenor.
 No. 76-1186.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 4, 1977.
Decided Jan. 12, 1978.
 
 Charles M. Shea, Michael B. Nash, Chicago, Ill., for petitioner.
 Edward M. Fogarty, Washington, D. C., Ronald R. Glancz, John K. Villa, Appellate Section, Civil Division, Dept. of Justice, Washington, D. C., for respondent.
 Before FAIRCHILD, Chief Judge, CUMMINGS, Circuit Judge, and EAST, Senior District Judge.*
 FAIRCHILD, Chief Judge.
 
 
 1
 Petitioner, Association of Bank Travel Bureaus, Inc., petitions for review of a refusal by the Board of Governors of the Federal Reserve System (hereinafter referred to as "the Board") in a rulemaking proceeding to add operation of a travel agency to the list of activities permissible for a bank holding company. The Board found that the activities of a travel agency are not "closely related to banking" within the meaning of § 4(c)(8) of the Bank Holding Company Act, 12 U.S.C. § 1843(c)(8).[1] We affirm.
 
 I. THE DECISION OF THE BOARD
 
 2
 On September 7, 1973, First Bancorp., Inc. of Corsicana, Texas, applied pursuant to § 4(c)(8) for the Board's approval to continue in the business of a travel agency. After finding that a reasonable basis existed for the applicant's contention that the activity was closely related to banking, the Board published notices of proposed rulemaking and invited public comment. A hearing was held on January 14, 1975.
 
 
 3
 On January 26, 1976, the Board decided not to adopt the operation of a travel agency as a permissible activity for bank holding companies. In its order, the Board first identified the two relevant considerations under § 4(c)(8) of the Act: (1) whether the activity in question is closely related to banking, and, if so, (2) whether the activity is a proper incident to banking. Under the Board's interpretation of the Act, the question of whether a particular activity is in the public interest is only relevant to the second part of the test and only comes into play if the activity has been found to be closely related to banking. The Board stated that at least three considerations could be considered in determining whether the operation of a travel bureau was closely related to banking:[2]
 
 
 4
 First, that banks generally have in fact provided the proposed service; second, that banks generally provide services that are operationally or functionally so similar to the proposed services as to equip them particularly well to provide the proposed services; and third, that banks generally provide services that are so integrally related to the proposed services as to require their provision in a specialized form.
 
 
 5
 The Board concluded that only the first factor that banks generally have provided the proposed service was applicable. Ultimately, however, the Board rejected even this consideration because: (1) the nature of travel services offered by present day banks is significantly different from that offered a century ago to immigrants; (2) the number of banks currently providing travel agency services is only about 150 or less than one percent of all commercial banks in the United States, and they account for less than two percent of all travel agencies in the nation; and (3) nearly two-thirds of all travel agencies affiliated with banks have been established within the past fifteen years. Having found that the "closely related" test was not met, the Board did not reach the further question regarding the public benefits, and decided against including travel agencies within the permissible activities for bank holding companies.
 
 
 6
 Petitioner contends that the Board applied an erroneous legal standard in making its decision and that its findings were not supported by substantial evidence. We find neither of these contentions persuasive.
 
 II. THE LEGAL STANDARD APPLIED BY THE BOARD
 
 7
 The Board has interpreted § 4(c)(8) to include two distinct tests. First, the Board must determine whether an activity is "closely related" to banking. If the Board finds that the activity is closely related to banking within the meaning of the Act, it then must decide whether the activity is a "proper incident" to banking by weighing the benefits against the possible adverse effects. In this case, the Board found that the activity of operating a travel agency was not closely related to banking and therefore had no need to consider the second part of the test.
 
 
 8
 Petitioner contends, however, that § 4(c)(8) contemplates only one test rather than the two-tiered test applied by the Board. The proper test, petitioner asserts, combines both the "closely related" test and the "proper incident" test. Under this view, the Board presumably would be obligated to consider the benefits resulting from a particular activity in evaluating any application.[3]
 
 
 9
 The Board's two-tier test, however, has been adopted and endorsed by every Circuit to consider the question. E. g., Alabama Ass'n of Insurance Agents v. Board, 533 F.2d 224, 235, 245-47 (5th Cir. 1976); National Courier Ass'n v. Board, 170 U.S.App.D.C. 301, 304-05, 516 F.2d 1229, 1232-33 (1975); Independent Bankers Ass'n of Georgia v. Board, 170 U.S.App.D.C. 278, 287-88, 516 F.2d 1206, 1215-16 (1975); Bank America Corp. v. Board, 491 F.2d 985, 988 (9th Cir. 1974). Moreover, the Board's interpretation of the statute is supported by the legislative history. As the explanatory material accompanying the Conference Bill clearly states:
 
 
 10
 The effect of section 4(c)(8) as a whole is to establish, in effect, two tests for the Federal Reserve Board to use in deciding cases under section 4(c) (8). First, the Board must determine whether the particular activity sought to be engaged in is "so closely related to banking or managing or controlling banks as to be a proper incident thereto." And, secondly, in determining whether a particular activity is "a proper incident" to banking or managing or controlling banks, the Board must determine whether the public benefits outweigh the adverse effects, such as the ones enumerated in the second sentence of section 4(c)(8).
 
 
 11
 H.Rep.No.1747, 91st Cong., 2d Sess., p. 12 (1970) reprinted at 1970 U.S.Code Cong. & Admin.News at 5572-73.[4] Finally, even if the unanimity in the Circuits and support in the legislative history left any doubt as to the proper construction of the statute, we would support the Board's interpretation because of the well established rule that the interpretation of a statute by an agency charged with its administration is entitled to great deference. E. g., Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965).
 
 
 12
 III. PETITIONER'S CONTENTION THAT THE BOARD'S FINDINGS ARE NOT SUPPORTED BY SUBSTANTIAL EVIDENCE
 
 
 13
 Petitioner contends that the Board's findings that services of travel agencies have changed, that less than one percent of all banks provide travel agency services, and that two-thirds of bank travel agencies established in the past fifteen years were not supported by substantial evidence. At the outset, we note that petitioner has misconceived the proper standard of review. As the Board engaged in a rulemaking proceeding which did not involve findings "required by statute to be made on the record after opportunity for an agency hearing," see 5 U.S.C. §§ 553, 556, 557, the substantial evidence standard of review is inappropriate. Rather, the proper test is whether the Board's findings of fact are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706 (1970), see, e. g. , Alabama Ass'n of Ins. Agents, supra, at 240; National Courier Ass'n, supra, 170 U.S.App.D.C. at 307, 516 F.2d at 1235.[5]
 
 
 14
 The findings of the Board were not arbitrary, capricious, or an abuse of discretion. Other courts, for example, have found that the character of travel services has evolved over the past century. E. g., Arnold Tours v. Camp, 472 F.2d 427, 434 (1st Cir. 1972). The Board's findings that less than one percent of all banks provide travel services and less than two percent of travel agencies are banks and that two-thirds of all travel agencies were established in the last fifteen years are similarly not arbitrary or capricious and, indeed, were based on data supplied by petitioner.
 
 
 15
 The petition for review is DENIED.
 
 
 
 *
 Senior District Judge William G. East of the District of Oregon is sitting by designation
 
 
 [1]
 Section 4(c)(8), 12 U.S.C. § 1843(c)(8), of the Bank Holding Company Act provides:
 (c) The prohibitions of this section shall not apply to . . .
 (8) shares of any company the activities of which the Board after due notice and opportunity for hearing has determined (by order or regulation) to be so closely related to banking or managing or controlling banks as to be a proper incident thereto. In determining whether a particular activity is a proper incident to banking or managing or controlling banks the Board shall consider whether its performance by an affiliate of a holding company can reasonably be expected to produce benefits to the public, such as greater convenience, increased competition, or gains in efficiency, that outweigh possible adverse effects, such as undue concentration of resources, decreased or unfair competition, conflicts of interests, or unsound banking practices. In orders and regulations under this subsection, the Board may differentiate between activities commenced de novo and activities commenced by the acquisition, in whole or in part, of a going concern.
 
 
 [2]
 The Board derived these three criteria from the recent decision in National Courier Association v. Board, 170 U.S.App.D.C. 301, 516 F.2d 1229 (1975)
 
 
 [3]
 While we reject this interpretation of § 4(c)(8) as will be made clear by the rest of this opinion, we recognize that it is a possible reading of the statute. It may be, however, that even under this unitary test proposed by petitioner, an activity such as operating a travel bureau may be so distantly related to banking that it could never meet the benefit test and therefore no adjudicatory hearing would be required
 
 
 [4]
 Petitioner contends that this Conference Report is only a minority report because it was signed by only four of the twelve members of the joint House-Senate Conference Committee. Under the rules then in effect, however, only the House conferees had the right to prepare and sign the report. The four signatures constituted a majority of a possible seven House members entitled to sign the report. Other Circuits have specifically rejected the "minority" report argument advanced by petitioner. E. g., Alabama Ass'n of Ins. Agents, supra, 533 F.2d 224, 228, n. 13; National Couriers Ass'n, supra, 170 U.S.App.D.C. 301, 308, 516 F.2d 1229, 1236 at n. 13
 
 
 [5]
 We are aware that the last sentence of 12 U.S.C. § 1848, which provides for judicial review of orders by the Board, states that the findings of the Board as to facts shall be conclusive "if supported by substantial evidence." We interpret this sentence, however, to apply to findings of fact "on the record" in an adjudicatory hearing as contrasted with a rulemaking proceeding as in the present case